[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14803; 14-10883
Non-Argument Calendar
_____

Agency No. A087-747-884

ALI BASHIR MOHAMED,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
_____

(December 1, 2014)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Ali Bashir Mohamed, a native and citizen of

Somalia, petitions for review from the order of the Board of Immigration Appeals

("BIA") affirming the Immigration Judge's ("IJ") denial of his application for

asylum and the BIA's order denying his motion to reopen.   The agency concluded that Mohamed failed to establish that his political opinion and membership in the Garre clan were "at least one central reason" for Al-Shabaab's efforts to recruit him.  On appeal, he argues that: (1) the BIA applied the wrong legal standard in denying his application for asylum; (2) the record compels a finding that he suffered past persecution and has a well-founded fear of future persecution; and (3) the agency failed to give reasoned consideration to Professor Tim Carmichael's affidavit and testimony.  After thorough review, we affirm.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  Here, because the BIA agreed with some of the IJ's reasoning, we review both the decision of the BIA and the IJ on those points.  See id.

We review factual findings under the substantial evidence test.  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005).  To reverse a factual finding under this test, we must find not only that the evidence supports a contrary conclusion, but that it compels one.  Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001).  Further, under this test, we must affirm the IJ's and BIA's decisions if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (quotation omitted).   Moreover, we view the

2

record evidence in the light most favorable to the agency's decision and draw all inferences in favor of that decision. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Id. We review legal issues de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001); see also Perez-Guerrero v. U.S. Att'y Gen., 717 F.3d 1224, 1231 (11th Cir. 2013), cert. denied, 134 S.Ct. 1000 (2014) (reviewing as a question of law whether the BIA gave reasoned consideration to an issue).

Under the Immigration and Nationality Act ("INA"), the Attorney General or Secretary of Homeland Security has discretion to grant asylum to an alien who qualifies as a refugee. 8 U.S.C. § 1158(b)(1)(A). Asylum applications filed after May 11, 2005, are governed by the REAL ID Act of 2005. Shkambi v. U.S. Att'y Gen., 584 F.3d 1041, 1049 n.7 (11th Cir. 2009). A refugee is defined as a person:

> who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). We've held that "[a] particular social group refers to persons who share a common, immutable characteristic that the members of the group either cannot change, or should not be required to change because it is

fundamental to their individual identities or consciences." Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1310 (11th Cir. 2013) (quotation omitted).

To prove asylum eligibility, an applicant must show: (1) past persecution on account of one of five statutorily protected grounds, or (2) a well-founded fear that a protected ground will cause future persecution. Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290 (11th Cir. 2006); 8 C.F.R. § 208.13(a), (b). The applicant bears the burden of proving that one of the enumerated grounds "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The applicant can do so by "presenting specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such [a protected ground]." Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009) (quotation and emphasis omitted). Further, applicants must provide some evidence, direct or circumstantial, of their persecutors' motives. INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992). The persecution need not come only from government forces, but can be by non-government groups the government cannot control. See Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010). However, "[e]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." Rodriguez, 735 F.3d at 1310.

4

Persecution based on political opinion is based on the victim's political opinion, not the persecutor's political opinion. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004). However, the relevant question is whether the persecutor is acting because of the victim's political opinion, not whether the victim has a political opinion. Id. at 438. In Elias-Zacarias, the Supreme Court held that a guerilla organization's attempt to recruit an individual into its ranks did not necessarily constitute persecution on account of political opinion. 502 U.S. at 481-82. The Supreme Court explained that, even if the guerilla organization recruited in order to carry out its political goals, that did not mean that the forced recruitment was persecution on account of political opinion. Id. at 482. The Supreme Court concluded that Elias-Zacarias, who said he resisted the guerillas' recruitment efforts because he was afraid the government would retaliate against him, had not established that he resisted recruitment based on his political opinion. Id. at 482-83. Even if the record showed that he had a political opinion, the record did not compel a finding that he had a well-founded fear of future persecution by the guerillas because of that political opinion. Id. at 483. Instead, the record showed that he would be persecuted for his refusal to fight with the guerillas. Id.

Likewise, in Sanchez, we said that an alien could not qualify for withholding of removal relief simply by showing that she would be persecuted for her refusal to join the guerillas. 392 F.3d at 438. We held that the record did not establish

5

Sanchez's actual or imputed political opinion, or compel a finding of any nexus between Sanchez's political opinion and the guerillas' alleged persecution. Id. To the contrary, we determined that the evidence showed the guerillas persecuted her because of her refusal to cooperate with them. Id.

In Ayala, an alien appealed a BIA decision denying his 2006 applications for asylum and withholding of removal, and challenged the BIA's determination that he failed to show past persecution or a well-founded fear of future persecution. 605 F.3d at 943, 948. In describing the nexus requirement, we did not cite to the INA, but explained instead that an asylum applicant "need only show that the persecution is, at least in part, motivated by a protected ground." Id. at 949 (quotation omitted). We ultimately vacated and remanded the BIA's decision denying asylum and withholding of removal, concluding that the BIA and IJ did not give reasoned consideration to Ayala's claim of past persecution. Id. at 948.

For starters, we reject Mohamed's claim that the BIA applied an incorrect legal standard in establishing the nexus requirement. Mohammed's asylum application, which was filed on August 5, 2010, is governed by the REAL ID Act. The asylum statute, as amended by the REAL ID Act, provides that in order to meet the nexus requirement, the asylum applicant must show that one of the five protected grounds "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The agency applied this legal standard.

Mohamed's reliance on our statement in Ayala is misplaced.  Our statement that an applicant need only show "that the persecution is, at least in part, motivated by a protected ground" to establish the nexus requirement was dicta, as the ultimate holding was that the agency failed to give reasoned consideration to the alien's past persecution claim.  See Ayala, 605 F.3d at 948-49.  In any event, Ayala's comment that the persecution must be "at least in part" motivated by one of the enumerated grounds did not purport to interpret the "one central reason" standard of the new § 1158(b)(1)(B)(i) -- and did not even mention it in discussing the nexus requirement -- but simply said that the protected ground need not be the sole reason for the persecution.  See id.  This is not necessarily in conflict with the clear statutory language providing that the protected ground be "at least one central reason" for the persecution.  See 8 U.S.C. § 1158(b)(1)(B)(i).

Next, substantial evidence supports the agency's finding that Mohamed has not established past persecution or a well-founded fear of future persecution on account of his political opinion.  To begin with, Mohamed has not shown that Al-Shabaab's recruitment efforts were because of his political opinion.  See Elias-Zacarias, 502 U.S. at 481-82.  Even if Mohamed's refusal to join Al Shabaab was due to his own political beliefs, he has not presented any "direct or circumstantial evidence" that Al-Shabaab was aware of his political views and sought to recruit him or harm him because of it.  See id. at 483.  To the contrary, the background

7

evidence and Mohamed's own testimony establishes that Al-Shabaab sought to recruit anyone to fill its ranks, including children and the disabled. Thus, substantial evidence supports the agency's finding that Al-Shabaab's actions were not because of any political opinion that Mohamed had expressed, but were due to Mohamed's refusal to join their ranks. This Court and the Supreme Court have concluded that such refusal does not compel a finding that an alien was persecuted on account of his political opinion. See id. at 481-82; Sanchez, 392 F.3d at 438.

Nor does the record compel a finding that Mohamed suffered past persecution or has a well-founded fear of future persecution on account of his membership in the Garre clan. The IJ and BIA determined that, even if Mohamed had identified a cognizable social group, he failed to establish that Al-Shabaab sought to recruit him because he was a member of the minority Garre clan. Moreover, as noted above, substantial evidence supported the agency's determination that Al Shabaab sought to recruit anyone to join their ranks.

Mohamed's argument that Professor Carmichael's affidavit and testimony supports his claim is unavailing. While Professor Carmichael said that those most vulnerable to Al-Shabaab's recruitment efforts were the "socially weak," he described this group as including those from minority clans and the physically and mentally disabled. Professor Carmichael's affidavit was consistent with the other background material, which showed that Al-Shabaab targeted a wide range of

8

individuals for recruitment, including children, students, teachers, and the disabled. Thus, the fact that members of the Garre clan (and other socially weak groups) were most vulnerable to Al-Shabaab's recruitment did not compel a finding that a central reason for Al-Shabaab's recruiting and targeting of Mohamed was his membership in such group.

We are also not persuaded by Mohamed's claim that the agency failed to give reasoned consideration to Professor Carmichael's affidavit and testimony. Indeed, the BIA or the IJ is not required to discuss in its opinion every claim raised by a petitioner. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006). Where the BIA has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented. See id. Rather, the BIA must "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." See id. (quotation omitted).

Here, the record belies Mohamed's assertion that the BIA and IJ did not consider Professor Carmichael's affidavit and testimony. The IJ explicitly said that Professor Carmichael's testimony was consistent with the Country Reports, and that Professor Carmichael added some additional information related to Al Shabaab's involvement in politics and the bombings in Somalia. The IJ, however,

9

noted that it was not necessary to qualify Professor Carmichael as an expert because his expertise in the Somali zone of Ethiopia was not relevant to the issue of whether Al-Shabaab persecuted Mohamed on account of his membership in the Garre clan and his political opinion. In fact, Professor Carmichael admitted that although he had been qualified as an expert 25 times, he had never been qualified as an expert on Somalia. Moreover, the BIA noted that Mohamed had not established that further treatment of Professor Carmichael's affidavit and testimony would alter the outcome. Based on the treatment of Professor Carmichael's affidavit and testimony in the IJ and BIA's respective orders, the record shows that the agency considered the "issues raised and announc[ed] its decision in terms sufficient to enable [us] to perceive that it has heard and thought and not merely reacted." See Tan, 446 F.3d at 1374.

Accordingly, we deny the petition for review.[1]

**PETITION DENIED.**

---

[1]    We also note that Mohamed has abandoned any challenge he may have had to the BIA's denial of his motion to reopen. Although he makes passing references in his brief to how the evidence he presented with his motion to reopen supports his argument that the agency erred in concluding that he failed to establish past persecution or a well-founded fear of future persecution, he does not offer any argument as to why the BIA abused its discretion in denying his motion to reopen. See Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1152 n.12 (11th Cir. 2014). He does not mention or take issue at all with the BIA's decision that his new evidence was not sufficiently material to justify reopening. Thus, Mohamed abandoned this issue. Moreover, Mohamed's attempt to use new evidence submitted with his motion to reopen to argue that substantial evidence did not support the agency's denial of his asylum application is unavailing, since that evidence was not before the agency when it denied his asylum application. See 8 U.S.C. § 1252(b)(4)(A) (noting that this Court shall decide the petition only on the administrative record on which the removal order is based).

10